We'll hear argument first this morning in Case 18-389, Parker Drilling Management Services v. Newton. Mr. Clement? Mr. Chief Justice, and may it please the Court, California wage and hour law is neither applicable on the outer continental shelf nor consistent with the Federal Fair Labor Standards Act. The Ninth Circuit's contrary approach, which treats California as supplying the rule of decision whenever California law pertains to the subject matter at hand and is not preempted by Federal law, is inconsistent with the text and context of the Outer Continental Shelf Lands Act. More particularly, by treating State law as the default rule and only to be displaced by inconsistent Federal law, the Ninth Circuit effectively treats the outer continental shelf no differently from the mainland, where California is sovereign, and contradicts the most basic judgment. Sotomayor Not quite, not quite. The Secretary could override the State law, which is not what generally happens in conflict preemption. Federal law, Federal agents have to enforce State law. There are substantial differences built into the Act. What I don't see is a clear statement that says something like, you want the word applicable to me, only if there's a gap or a void. Well, Justice Sotomayor, I think some of the unusual characteristics about State law when it's borrowed and then sort of transformed into Federal law on the shelf actually, I think, help provide the context that informs the meaning of the word applicable. I don't think there's any real doubt here that applicable means suitable or appropriate or fit for a purpose. So then the question really becomes, when is it appropriate to have State law be transformed into Federal law for use on the shelf? And I think ---- Sotomayor But tell me why when it's not inconsistent? Meaning, and that's my problem. It's suitable only because the language says when it's inconsistent. But here, Federal law clearly states that State law can supplement Federal law. So where is the inconsistency? Well, I want to answer your question, Justice Sotomayor, but first I do want to point out, I view the statute as really having two requirements, that it has to be State law applies to the extent it is applicable and not inconsistent. Now, to talk to the non-inconsistent piece, here I think the inconsistency is pretty glaring. In fact, the whole reason we're here is because California has a very different rule for addressing sleeping time on the employer's premises than the Federal rule. And the Federal regulators looked at this and they decided generally we're not going to have sleeping time be treated as work hours and we're generally going to respect the agreements of the employer and the employee. California looked at that specifically and said, well, we like that rule for health and other workers, we reject the Federal analysis. Now, to me, that makes them pretty glaringly inconsistent. Now, my friends on the other side, and I take the import of your question, would say, ah, but there's the Savings Clause. Well, there's at least three problems I see with the Savings Clause. The first is the Savings Clause is not even implicated by its terms unless State law and Federal law are inconsistent. If State law and Federal law are consistent, you don't need the Savings Clause, you never get there. They don't – when the Savings Clause applies, moreover, it doesn't make Federal law and State law consistent. It basically tells the employer which of two inconsistent laws they need to follow, which I think is quite different. The second problem with the Savings Clause is I think you can't divorce the Savings Clause from the reason that it's in the FLSA and most statutes, which is to respect the fact that States are and have been since the framing the primary regulators of employment relationships and the like, and so when a State is applying its law in its sovereign territory, I would say it's understandable and laudable that the Federal government wants to say, well, your State law can apply if it's more demanding. But that principle is completely out of place on the outer continental shelf where all law is Federal law. They have a third reason, which I'm happy to get out, which is Congress also knows and we have some statutes collected at footnote 3 of the Blue Brief. Congress actually knows how to enact a, call it a Super Savings Clause or a Savings Clause that's specific to Federal enclaves. And with respect to certain State laws, State unemployment compensation laws, State workers' comp laws, Congress has said we want the State law to apply even on a Federal enclave. But that's not what it did with the Fair Labor Standards Act. The Fair Labor Standards Act is an ordinary Savings Clause, which I think accommodates Federalism, but wouldn't apply on a Federal enclave. Kagan. After all that, I'm going to take you back to the word applicable. The language here is clearly not the clearest way of expressing what you want to express, which is that State law applies when there's a gap in Federal law. So you rightly say that we look to context as well. And as far as I can see, and tell me if I'm wrong about this, really your main argument from context is the statement about enclaves, right, that these, that this should be treated the same way as Federal enclaves are. Is that correct? I would really say I have two principal arguments. One of them is the enclave point. But I think even before you get there, I mean, the fact that 1333a2 converts the State law into Federal law to be applied by Federal administrators seems to tell me that something odd is going on here. And then particularly if you read that in conjunction with 1333a1, which extends the whole body of Federal law to the shelf, the way I think about it, just to put it simply, is even apart from Federal enclave principles, like, why would you create surrogate Federal law, which is what 1333a2 does, unless you had a gap in the actual Federal law that was extended to the shelf by 1333a1? Well, possibly because you know that you want this to be administered by Federal agents, and if it's going to be administered by Federal agents, it should be Federal law. So let's just go to the enclaves business. Because I think that that's an important part of your argument. And it's something on which people seem to disagree, and it seems as though it should have a clear answer, but I'm honestly not finding it. So as I understand Mr. Frederick's position, he says that apart from the ACA, the Crimes Act, that in fact in Federal enclaves, State civil law is applied. Do you think that that's wrong? We do think that's wrong. And, you know, I think fortunately for me, the Federal government agrees with me and has agreed with me in an unbroken chain, at least since about 1958, when they put together that exhaustive survey, which the Solicitor General cites, which is roughly contemporaneous with OXLA, and the Justice Department was up there testifying in front of Congress. So I tend to think that I'm in pretty good company on my understanding of Federal enclave law. But I do understand Federal enclave law very, very succinctly as this, which is when you have a new Federal enclave, you don't borrow State law as a general matter, and you specifically don't borrow State law when there's Federal law on the same matters, which I think is the language right from McGlynn. Even as to preexisting State law. Even as to preexisting State law. And the reason I think that makes. And how do we know that? Where is that coming from? Do we have cases that say that? Do we – is there some, like, Federal manual that says that? What's – I feel as though this should be something with an answer, and all we have is sort of assertions on both sides. So there's three places I would look. I would look to McGlynn. I would look to this comprehensive Federal survey. I mean, my goodness, it's like 200 pages long, and it comes to the same conclusion. And then the third place I would look to is the Assimilated Crimes Act, because I don't think the way to understand the Assimilated Crimes Act, which as to criminal law makes this point more specific, is being something unique to criminal law. It's really that the Congress in 1825 addressed criminal law because they had a particular problem they didn't have with civil law, right, which is the United So Congress was forced to act with respect to criminal law. And when it acted, what I'd say it did with the Assimilated Crimes Act is it reflected the broader principle, which is it didn't say we're going to apply Federal criminal law and state – rather, borrow state criminal law, even where we have an on-point Federal criminal statute. It said, no, we're going to borrow it to fill the gaps. And if you take a step back, I think that is the basic problem that you have in a Congress had in enacting OXLA, which is you've made it a Federal enclave, so you're not anxious to have a lot of State law applying there. But, you know, the law, like nature, abhors a vacuum. So you just don't want to have all sorts of, whether it's a cow wandering onto the railroad or whether it's people having a bet and, you know, no contract law, you just don't want there to be a vacuum. So you look at the other Federal enclaves inside California. There are. And what is the labor law regime there? The majority view is that the Fair Labor Standards Act does not apply to the Federal enclaves when they are within a State. My friend has found an unpublished opinion that applies a different rule, but we've found something like four or five or six opinions that go the other way. So there is – I think the majority view is that even on land, the Fair Labor Standards Act doesn't apply on a Federal enclave. You have one Federal minimum wage. And, again, I think that's – that conclusion is probably buttressed by the example of State workers' comp law and State unemployment law where you have specific Federal statutes collected in footnote 3 in our brief which make those laws applicable even on a Federal enclave. So the law in California is that when Congress is specific that a Federal employment statute applies to the enclave, it applies to the enclave, but otherwise one Federal minimum wage law is enough on the Federal enclaves. So the higher California minimum wage law does not apply on the Federal enclaves. I mean, so I think we have the much better view of the Federal enclave law. If you're a little nervous, though, about making a definitive holding about Federal enclave law, I suppose you really can get to the same conclusion just based on the structure of 1333 and the fact that A-1 extends the whole body of actual Federal law to the shelf. And Congress even was clear that that meant the Fair Labor Standards Act. And then when you get to A-2, you don't needlessly take State law and convert it into Federal law to be administered by Federal officials. Ginsburg. Can we go back to something Justice Sotomayor suggested, and I wonder if you agree with it, that there's no problem because the Secretary can knock out any State law it doesn't want by regulation. We don't agree with that, Justice Ginsburg, so I appreciate the opportunity to make that clear. As we read the provision that I think my friend on the other side is relying on is 1334A of OXLA, and that provision, as I read it, gives the Secretary of Interior the authority to promulgate regulations addressing leasing or leases on the Outer Continental Shelf. Now, I suppose if I lost this case, I might want to make an ambitious argument that working conditions has something to do with leases on the Outer Continental Shelf, but I don't think that's the better argument, and I don't think it's as simple as the Secretary of the Interior can trump anything he or she wants. I think that the regulatory authority is a little more modest on this. Sotomayor. Is there anything but leasing on the Continental Shelf? I'm sorry? Is there anything but leasing on the Continental Shelf? Nobody owns those operations. I thought they were fairly heavily regulated by the Secretary generally. Sure. But the specific term says the leases, not leasing. And again, you know, I don't want to say that I couldn't make an argument, but I would say based on the plain language of the regulatory authority, I don't think the Secretary of Interior has that authority, and I think it would be a little weird, frankly, for the Secretary of Interior to effectively have to take action to vindicate the judgment of the Wage and Hour Division regulators who looked at the specific issue of how to treat sleep time and came to a considered conclusion that sleep time we don't want to make automatically part of hours' worth. One of the difficulties I have here is how do you define void or gap? So let's talk about that, because you can always define it broadly or narrowly. If there's a State law that says you can't fire somebody for going to jury service for a State calling, not a Federal, is that a void or gap that the Federal law doesn't do that? I would probably say in that situation that there's not a gap in Federal law, because Federal law addresses the general subject of sort of employment discrimination and the like. I actually think that, I mean, obviously the jury service example is probably uniquely unlikely to arise directly on the Outer Continental Shelf, and it also might be the kind of thing. Sotomayor, I mean, people can be called, they're given X number of extensions, and then they're told show up. Yeah. And you go to your employer and you say out on the shelf, I've got to take a week because I've got to go serve. And to you that's not. Can you see the other side of that argument? I can see the other side of that argument, and I can also see that that. So that begs the question, which is, I know conflict preemption, and I know that some of my colleagues don't like it, but at least there's a well-defined body of law. Under your views, we're back to now defining a different kind of conflict preemption, one that has to do with voids and gaps.  There isn't a statute of limitations or a failure to have one, not a void. There is a Federal common law. We don't like to use it. But we have a case that said we're going to use Louisiana's statute of limitations. That wasn't a void or gap, even though we had Federal law. Well, specifically in that case, you were looking at the question of whether you should borrow a statute of limitations from Federal common law. And it seemed clear to this Court from the legislative history that Federal common law was not what Congress wanted you to use for gap. How about the High Seas act, death on the High Seas Act? That was Federal law. That's right. And we still borrowed State law. Exactly. Because this Court found a gap. And I actually think that Rodrigue, which is the case where you look to State law borrowed through the Lands Act as opposed to the death on the High Seas Act. But we had Federal law that answered the question. Exactly. But it didn't answer the question on the platforms. It only answered the question on the seas. And this Court said, and this was, you know, as I understand it, basically it's holding, that, you know, since there was sort of no Federal law that directly applied, there was a gap and you borrowed State law. And I would only add before I sit down that the Fifth Circuit, and really every member of the Fifth Circuit who has asked this question until the Ninth Circuit and the decision below, has been applying this Court's cases, which they understood as applying this gap-filling analysis, and none of them have had a real problem with that, and certainly I don't think any of them would identify a gap here where the Fair Labor Standards Act comprehensively addresses issues of overtime and the like. Just on that, Mr. Clement, and I apologize, but I think people are a little bit over the top when it talks about these gaps, is really saying that there's a Federal remedial scheme that covers a problem, and so that there's no need to look for remedies anyplace else. And that's a very different kind of situation than the one we have here, isn't it? No. I think this is exactly the same situation, which is you do have a Federal remedial regime that provides a remedy for overwork, and you don't need to look to State law to borrow a different regime that you would then make a second and duplicative and, I think, inconsistent Federal minimum wage statute. Thank you. Roberts. Mr. Michel. Mr. Chief Justice, and may it please the Court. More than 70 years ago in United States v. California, this Court clarified the Federal government's paramount sovereignty over the continental shelf. Congress reinforced that interest throughout OXLA, including its choice of law provision. Now, unlike a typical choice of law provision, Section 1333 of OXLA does not direct a choice between two bodies of law. Instead, it creates one body of law, a body of Federal law, and it adopts State law as, quote, the law of the United States to the extent it is applicable and not inconsistent with other Federal law. As this Court and virtually every other Court has recognized for 50 years, those words refer to gap-filling in Federal law. Respondents' position, by contrast, would essentially replicate the position on mainland California on the outer continental shelf, with the small exception that Federal officials would enforce the law, which we think is inconsistent with the text, the purpose, and the history of OXLA. How would Federal officials enforce the State law? Are there sort of administrative responsibilities with respect to the State employment law that the Federal officials would have to undertake, or? That is a big concern that we have. You know, I think if you look at this case in particular, it's actually State administrative law that's being construed by the California Supreme Court. I think it's Wage Order 16 that the Mendiola case is construing. So you do have Federal officials sort of trying to interpret the work of State administrators. But I mean, are they filling out forms? Are they enforcing? I mean, I don't quite know what you're talking about when you say Federal officials will have to administer. I mean, are they just simply checking to make sure that they're being paid whatever it is, $12, or? I say, yes. I mean, it varies, obviously, depending on the regulation. With something like this, you know, presumably it's the – it would be the wage and hour division of the Labor Department that ensures compliance with minimum wage laws in the same way that it does on the mainland, although, of course, it would have to adopt all of this State law where we already have a Federal law. And as we reproduce in the appendix to our brief, you know, Federal law, including the Labor Department regulations, address a lot of these issues already. And I do think, you know, if you sort of picture at page 8A of our brief, for example, we have the statute on the minimum wage, which at the bottom says it's $7.25 an hour. Given this unique choice of law provision, what we're – what Respondent is essentially saying is that you should adopt another subprovision that has a different Federal minimum wage. And I do think it's just a very odd concept and one that has no support in the statute history to say we're going to have two Federal minimum wages where Federal law has already answered this question. Two questions, but one is minor. And if you don't know, just say. What percentage, rough guess, of Outer Continental Shelf activity takes place in the Fifth Circuit? Is it more like – that's one question. And do you want – if you have a quick answer, I have another question. I have a pretty quick answer. I think it's about 97 percent. 97 percent. Okay. Now, my second question is this, that has Federal enclaves in mind. There are dozens and dozens of Federal regulatory programs. They have to do with, you know, safety, OSHA, NHTSA, drugs, you name it. And in those thousands and thousands of Federal regulations, there's quite a lot of room for State activity, even in tort law. We've had cases like that at the FDA. What's been the practice? That is to say, there is room in the sense that Federal law does not preempt the State law, but it does lay down rules that generally apply. All right. In Federal enclaves in general, can you shed any light on whether, with those thousands of other statutes and regulations, there has been a practice of just limiting it to preemption, otherwise State law applies, or a practice of looking for a gap? So I think I'll – to start, there is a default Federal enclave rule. And I – my friend is correct that you can customize enclaves in different ways. But the basic rule is pretty straightforward. On the criminal side, since 1825, it's been the Assimilative Crimes Act. Yeah, yeah. But I'm thinking of civil, and I'm thinking of regulatory. And on the civil side, the law, at least since 1885 in this Court's decision in McGlynn, is that Federal law is exclusive in the enclave, with the exception of preexisting State law that is not in conflict with and not inconsistent with Federal law. So I understand you and Mr. Clement to have a little bit of a gap there, because I understood Mr. Clement to say that even as to preexisting State law, that that did not apply of its own force as the default rule. And you're saying preexisting civil State law does apply. Is that correct? I think that's the rule of McGlynn in an onshore enclave. Of course, you know, the Court, as Mr. Clement suggested, doesn't need to confront that here, because the one thing we know about the Outer Continental Shelf is that there was no preexisting State law. Breyer, we do have to confront it, I think, because, after all, there is a lot of preexisting State law in respect to many Federal enclaves. And so if the rule was no gap is necessary, all we look to see is preemption, then there was a vast amount of nonpreempted State law that Federal enclaves had to accept as theirs, namely, all preexisting. And so why would there be a different rule where the statute is different and the words don't require a gap, they might, why would you want to have, though, a different rule for subsequent State law? I mean, of course, if it's preempted, it's out, but I mean nonpreempted. Right. So to be clear, the preemption has never been the law on Federal enclaves. This preexisting law rule is borrowed from an international law rule, as the Court explains in McGlenn. There's some hint at this in Chief Justice Marshall's opinion in the Cantor case that American territorial courts had applied a similar rule to the former territory when the United States was there. But the basic Federal enclave rule does not accommodate preemption. I think an illustrative example are the two cases the Court issued on the same day in 1943, one in the Pacific Dairy case and the other in the Penn Dairy case. And the Pacific Dairy case was at Moffitt Field. Breyer. My question is not about preemption. My question is about nonpreempted State law. And to be very simple about it, my question is, if all nonpreempted State law that was preexisting applied to Federal enclaves, what practical reason would there be for having a different rule where the State law was passed subsequent to the territory becoming a Federal enclave? I think it goes to the core nature of a Federal enclave, Justice Breyer. When the United States takes exclusive jurisdiction, that's the word that the Constitution uses, it displaces Federal – it displaces State authority. The preexisting rule is really sort of an emergency measure to, as the Court said in one of its cases, make sure that there's not an area that has an absence of law. Could you address the Secretary of the Interior's – the extent of the power as you see it? Do you agree with Mr. Waxman that it's limited to just leasing or leases? Or do you think it's a broader power? I think it's a little broader, but I'm relying on the same provision that my friend did, which is 1334a. It's the next provision in the statute. And it provides regulatory authority over leasing. And it goes on to say also for – to provide for the prevention of waste and conservation of natural resources and the protection of correlative rights. So that we do think is broad authority, but I do think it would be hard to get to wage and hour law from there. It is – although there were some versions of the statute that initially gave the Interior Secretary sort of general preemptive authority over the entire OCS, that's not the statute that Congress ultimately adopted. And so we don't think – although, of course, we don't think you need to get to the Interior Secretary's authority here, but we don't think the Interior Secretary could preempt a wage and hour law at the end of the day. As my friend suggested, that – it would be within the Labor Department. It wouldn't be within the Interior Secretary's authority under OCSLA or under its organic statutes. Kagan. Mr. Michel, if you are right, what work is the word inconsistent doing? In other words, how can the State law be inconsistent with Federal law if there's a total void in Federal law? So I agree with you that, you know, the two words shed a lot of light on each other, and there may not be a huge gap, so to speak, between them. But I do think there are some examples. We cite some in our briefs. Another example that I think has come up in this Court's enclave cases is the general principle that when the Federal government takes an enclave, State law, whatever else it does, cannot interfere with the Federal government's use of the enclave for the purpose of the enclave. So even if there was some gap in Federal law and the State came along with a law that would, say, make it impossible or not even that bad, interfere with the government's use of an enclave for a military base or a national park or something like that, even in the absence of Federal law, of an on-point Federal law, that would still be inconsistent. Kagan. I guess I'm having a little bit of a hard time. I'm sorry. Go ahead. Just understanding that example and the ones in your brief, are you saying that even if it's inconsistent with the Federal law, it can be inconsistent with sort of broad scale Federal policy, and that that's what the statute is looking towards? I think it's both. Federal law is the most obvious example, but the cases have also referred to Federal policy. So inconsistency with either, we think, would be a reason not to assimilate the statute. Thank you, counsel. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. Our position is that the plain language of OXLA and the Fair Labor Standards Act control this case, and that the Ninth Circuit was correct in determining that the California Labor Code provisions at issue here are both applicable and not inconsistent with Federal law. OXLA, therefore, incorporates them as Federal law. I'd like to see the Court's opinion on that. How close does your position come to the one thing we know Congress rejected, that is, direct application of State law? Instead, State law is incorporated as Federal law. It's administered by Federal officials. Yes. We do know that. OXLA, however, was a compromise, and the compromise was between having State control over the law of the outer continental shelf and Federal law, but Federal law did not encompass all of the legal relationships and matters that concern human endeavors. And that's why what Congress did was to incorporate State law as Federal law, with OXLA and the Secretary having the authority to issue the appropriate regulations. And if I could just start there, the first sentence of Section 1334a in answer to your question, Justice Sotomayor, reads as follows. The Secretary shall dot, dot, dot, prescribe such rules and regulations as may be necessary to carry out such provisions. I'm astonished that the other side thinks that that language isn't broad enough to displace any State rule that gets in the way of what the Federal government deems to be necessary. We know through practice that the EPA is regulating outer continental shelf air emissions that are prescribed by California, and it is doing so pursuant to a memorandum of understanding. There are memorandum of understanding between the Secretary of Interior and the Coast Guard and the EPA and the National Park Service and the National Oceanic and Merit Administration that concern the interrelationships of how law enforcement occurs with State law as the substance of what is being enforced. That happens every day in the National Park Service, where National Park rangers are enforcing hunting and fishing rules that are prescribed by States. Robertson, which Federal agency has Congress given preemptive authority with respect to the outer continental shelf? The Interior Department. So even in a question of labor law, the Interior Department could issue regulations that of their own force would preempt the California rule? Yes. Yes. And that's what 1334a stands for. And it is why, in the way this is implemented, the Interior Department has these memorandum of understanding with States and with other Federal agencies in order to determine which laws are going to be applicable. Now, notably, this gap-filling notion on the other side is expressly written into two statutes that we cite in our brief, the Assimilative Crimes Act and the Civil Rights Attorneys' Fees Awards Act. But Congress didn't choose to use those words in the OXLA. Instead, what Congress did was to say that applicable and not inconsistent State law would be. How is a ---- On the consistency point, I understand what ---- I understand it to be our basic rule in preemption analysis that something like this would generally not be inconsistent. If the Federal minimum wage is 7 and the California is 12, you can comply with both by paying 12. But here what's distinctive is that it's not a disagreement between Federal and State law. This is ---- both are Federal law under operation of OXLA. So if you ask the question, what is the Federal minimum wage, it is inconsistent. Because in one case, you would say, well, it's $7 under the Federal LSA, but it's also ---- but it's $12 under the Federal law that's incorporated from California. Doesn't that make a difference in how you apply the inconsistency point? No. You ---- I thought you might say that. Well, and let me refer you to one of your cases, Your Honor. It's the Powell case. And in that case, the Court had before it an application of the Fair Labor Standards Act minimum wage, and a minimum wage that was set higher by virtue of another Federal statute that applied to certain Federal operations. And this Court held in Powell that the higher standard applied. And it did so by looking at the plain language of the Savings Clause. And if I could refer you to page 9a. But was that a consistency analysis of the sort that you would apply? It couldn't have been on the normal preemption cases, because it's two different sources of Federal law rather than Federal or State. No, but let me refer you to the Savings Clause plain language, because, again, I think that the statute operates in our favor. At 9a of the Gray brief, the government has set forth the language, and let me read it. Quote, No provision of this chapter or any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or maximum work week. And so the way the Savings Clause works in the Federal, comparing Federal law, if there is a higher municipal ordinance or a higher State law, you apply the higher one. That's what the Savings Clause provides. And what the other side wants to do is to take one part of the Fair Labor Standards Act, the part that says $7.25 an hour, and ignore the words that come right before that, which read, quote, Not less than. And so. Alitos, that applies to this particular case? It applies to this particular case because California has issued wage orders that provide for more generous minimum wage per hour standards, as well as definition of what a work week is and the per hour. Alitos, I thought the dispute was about the definition of a work week. It is in part a dispute about the definition of a work week, and in part a definition of whether or not certain things that are done within that work week, time spent, for instance, meal allowances, how sleep time is calculated, et cetera, are within the work or within the limit. And so to that extent, Your Honor, what we have in the Fair Labor Standards Act are some provisions that do speak to the question with the Savings Clause and some that do not speak at all. For instance, the Labor Department doesn't speak to issues of mealtime allowances and how pay stubs are to be done to inform workers. And what the Department of Labor has said in its regulatory guidance, and we set this out, I think it's at page 8 of our brief, is that where there is silence in the FLSA, a higher or more generous standard by the State shall prevail. And our position is that what Congress intended in Oxlade to do was to incorporate those as applicable and not inconsistent standards. Ginsburg On the Savings Clause, I thought the Savings Clause was meant to allow a State to apply its own more protective regime in a domain over which the State is sovereign, but the State is not sovereign over the intercontinental shelf. Frederick, That's correct. But what the same way, Your Honor, that in Powell, this Court determined that one Federal statute provided for a higher minimum wage than what the FLSA did, we're not arguing which sovereign gets to determine the rules. What we're saying is the content of those rules varies depending on the source. And here, just because the source of that happens to be California law doesn't affect things. You asked earlier about enclaves in California, and let me give you a different answer than the one my colleagues on the other side gave. There is a district court's decision called Korndobler, which we cite in our brief and we discuss. That's a case in which the district court was looking at whether the Fair Labor Standards Act provisions for minimum wage predated the creation of Sequoia National Park. And the Court did a very extensive analysis to determine that, in fact, California, as of 1913, had established a minimum wage rule. And it applied this Court's decisions, and I'll talk about those in just a second, to say that, in fact, the preexisting State law of minimum wage was brought into the Sequoia National Park when Congress created that as a Federal enclave. And so I do think that the other side is not consistent with each other as to what the standards are. And let me talk about this. Roberts. Roberts. That's an awful lot of weight to place on one unpublished district court decision. Well, it was answering and the reason why the three cases that he cites are not apposite is because there the State law came into existence after the creation of the Federal enclave. So the only case that's on point agrees with us. And let me talk about the two cases from this Court that actually give the standards. Justice Kagan, you were talking and asking about the standards, and there are two of them. One of them is called James Stewart and the other is called Paul. In the James Stewart case, what this Court did was it took a personal injury that occurred in a Federal enclave in New York where, because there were no – because it adopted the general enclave principles, it incorporated State standards with respect to what steel beams needed to be used in construction. There, the worker was injured because of a violation of the State standard. And what this Court held was that that State standard had been incorporated into the Federal enclave law and therefore was the law of the United States, I think was the phrase this Court used. So it was incorporated Federal law, even though the source of the standard and the substance of the standard derived from State law. And that all happened prior to – as the Federal enclave was being created. Similarly, in this Court's decision in Paul v. United States, which was an early 60s decision, there the Court applied exactly the same notion, which is that preexisting State law came into the law of the enclave and it was incorporated Federal law to be applied as Federal law. Mr. Friedman, can I take you back to a question I think Justice Alito was pursuing a moment ago? And I understand one of the important parts of your case is the definition of the work week and whether standby hours should be incorporated. California's treatment of them is subject to the minimum wage requirement. But the Savings Clause, at least as I understand it, and you can correct me if I'm wrong, while it preserves the ability of States to raise the minimum wage, it doesn't allow them to define the work week differently than Federal law does. So how do we deal with that? Why isn't your client's claim, at least inconsistent with Federal law, to that extent? Well, what the – as the Seventh Circuit has held, in terms of determining what is a minimum wage, you have to look at both the pay rate and what you are multiplying that pay rate by, which is what constitutes a working hour. And a working hour is what we are dealing with when we deal with situations like is the worker under the control of the employer, subject to the employer's callback or emergency call, et cetera. And so the issue about the work week constitutes how you define what is a working hour. Do you agree that Federal law and State law differ in how they define that? I – they do differ, except insofar as what the Labor Department has determined is not a difference in work week, just so we're clear about that. The 40-hours applies, and the Federal standard applies. But what constitutes a compensable hour? And it's that hour, and what the Department of Labor's regulations say is that there is a multi-factor test for determining when a worker is under the control of the employer. I understand that. Yes. I guess my question is still, don't Federal – Federal law and its definition is different than State law. Is that not right? I – well, I would say two things about it, Justice Gorsuch. One is that the Labor Department's regulations give room for States to define what is a compensable hour. We're not talking about any difference in 40. We all agree 40 is the number. We're on the same page, Fred. Yeah, yeah. We are. Yeah. But the issue is what constitutes a compensable hour. That actually is a fact question. I understand that. But we have a Federal law standard, and we have a State law standard. And they're different, arguably. Yes. And the Savings Clause doesn't speak to this particular issue, right? It speaks to what you multiply that by, $12 or something. Right. It doesn't deal with this issue. So the Savings Clause can't help you with respect to this issue, it seems to me. What do we do about that? Well, what the Labor Department has done is issued regulations and guidance where there is silence in the FLSA. And what it says is where there is silence, you incorporate or you deal with the State law and how the State law applies. And we've got those regulations in our brief. Mr. Frederick, I have poor memory on this issue. But didn't the Court below remand to see whether there were actual inconsistencies with certain of your claims? Yes. Number one, which were they? And secondly, how do you deal with Mr. Clement's point that your view basically makes this identical to normal State conflict preemption? What differences do you see in the two? Okay. Let me take the first one first. Why would your reading still result in a difference between normal the normal conflict preemption situation? Well, let me start with the second one first, then. In this Court's decision in Gara, the Court construed the words non-inconsistent with. And it said that they had the same content as normal conflict preemption. Is there a difference that would make it akin to conflict preemption? And that was a statutory interpretation case. Our position is that the most coherent way to understand the words non-inconsistent with is to apply the same standards that you have in the preemption canon, where you look at is it impossible to comply, does it stand as an obstacle, and the like. But that means that California then extends 200 miles out to sea. So. And Congress could have just said that and said California extends 200 miles out to sea. However, within this part of California, Federal officials will enforce the law. So remember, Justice Alito, that our client's shift begins and ends in California onshore in the uplands. The first two to three hours of every one of his shifts is exclusively within California, when he gets briefed for safety, when he gets the bus down to the port to take the vessel out to the break. And so. But I don't think respectfully that's responsive to the question, which is if your position were correct, then ordinary preemption principles would apply, and this – a lot of this language would seem pointless. Well, let me try to wrap it together in this way, Justice Kavanaugh, which is that if you're looking at the substance of the law, looking at whether there's conflict and inconsistency, the preemption cases give you an intellectual way to understand the substance of that. I'm not here to argue that California controls the outcome. The Federal Government does, and the Secretary has the authority to issue regulations if the Secretary perceives there to be a difference that would matter in the context of the Outer Continental Shelf. Kagan is that what you think the principal difference is? Because I have the same concern here. This is an awful lot of stuff to go through if all that Congress wanted to do was to essentially set up the regime that applies everywhere else. And especially in light of the fact that Congress seemed to have rejected a draft statute that said exactly that. So what is the difference, as you see it, between this statute and one that would just say, you know, here on the Outer Continental Shelf, just as in California, preemption principles apply? Well, number one, who decides? That's a big difference in terms of what regulatory power is given to displace a State standard. Number two, you have a decision, and you talk about the compromise, but let me give you the other part of the compromise, which was that it was advocated to have Federal admiralty law apply to the Outer Continental Shelf, and the Congress said no. And where they came in the middle was to create OXLA, where they incorporated these State standards, as Federal law to be implemented in that manner. But please keep in mind that the development of the Outer Continental Shelf encompasses relationships with the State, and that's why this Court in Hewson said that the special relationship between the adjacent State to the oil rig is important. Why? Because that's where the worker is coming from. That's where his lawyer can be expected to understand what the applicable standards are. That's why if something happens to him, he's going to know where to look for a legal redress. And there are many oil rigs within the 3-mile limit, and as this Court held in Viadull Lead, there is overlapping coverage between State workers' compensation and the Longshore Harbor Workers' Compensation Act. And it discussed a case called Herb's Welding, which says that within the 3-mile limit, State law controls completely. And so what we're talking about is a very fluid situation, if you will, between workers who might go to a rig within the 3-mile limit and be governed exclusively by State law, one shift, come back onshore, then go back out. And then come out to a shift that would be on the intercontinental shelf. And the question is, what legal regime is going to cover those people? And it's quite sensible why Congress would have said, substantively, we think that the State law ought to apply, but to the extent that the Secretary of Interior perceives there to be inconsistencies with the Federal standard, we're going to give the Secretary the authority, regulatory authority, to displace that standard. Breyer. That makes sense. Difficult argument, both sides. And what's gnawing at me is the word applicable. And the Fifth Circuit has, for 50 years, interpreted it to require a gap. And you heard the answer they gave to the question I asked, which was that 97 percent of those involved in this are in the Fifth Circuit. So I'm slightly worried. Yes. I don't know if it's determinative, but I'm slightly worried about overturning a set of court of appeals decisions under which industry and labor and everyone have worked, 97 percent of them, for 50 years. Let me go. All right. Now, what you do want to hear what you have to say. I do. And I have a number of things to say, Justice Breyer. And I appreciate you raising this so that I can address them orally. First, the Fifth Circuit decided that gap standard in a case called Continental Oil, which was a classic maritime law case, there the vessel went and it collided into the offshore rig. And the Court was faced with the question, what law applies? And what the Court said was, maritime law applies because there's no gap there. You know what happens with a marine casualty situation. The admiralty law will govern that situation. The same judge, Judge John R. Brown, who is one of the most distinguished admiralty law judges ever to serve in this Court, decided a case about 20 years or not in this Court, in the courts, 20 years later decided a case called PLT. Now, if you want to look at what reliance interests are, you should look at that case, not the Continental Oil case. Because in PLT, Judge Brown's decision for the Fifth Circuit did not use gap filling. Rather, he used a standard that is very much like what the Ninth Circuit did in this case. Moreover, the standards that you would be worried about applying here are not likely to arise in the Fifth Circuit cases, because State law has already made an affirmative determination not to apply their State laws to the Outer Continental Shelf. Both Louisiana and Texas have, by statute, determined that their workers' compensation is not going to apply to the Outer Continental Shelf, and their State labor laws will not apply to the Outer Continental Shelf. So to the extent that you perceive there to be a problem that would be unique in correcting the law in the Fifth Circuit, I don't think you have to have a similar type of worry as the kind of case that we have here, because neither Texas nor Louisiana have comparable State laws that seek to go above the Federal floor in the FLSA. Now, the word applicable, I do think, has meaning, and the other side fluctuates between it being surplusage or irrelevant or whatever. But I do want to point out that it's not just applicable State law that the Federal — that the Secretary is administering. It's also applicable Federal law. So if the word applicable really does mean gap-filling, you strain to wonder how is it that the Secretary is supposed to determine what applicable law is if you give it an authoritative construction that the word applicable means gap-filling, because then you have a complete contradiction and you have read the statute in a very bizarre way, because ordinarily what the Secretary is doing is reading the word applicable Federal law to decide does the Clean Air Act apply. Why does not inconsistent with suggest gap-filling in this context, in this statute? Well, for the reason that this Court in Powell explained why, and also why this Court in Guerra explained why, non-inconsistent with in its ordinary parlance would mean not incompatible with, and incompatible is a word that is stronger than simply the creation of a void or a gap. You would look at whether there is a conflict or inconsistency. So if you are looking at the words as — I would say in ordinary parlance two different requirements are not consistent with one another. Well, you look at whether or not the two requirements that may be different can be accommodated to each other. And that's why in — That sounds like impossibility. No. In Guerra, the Court looked at the application of California's standards regarding pregnancy relief and discrimination and the Federal standard for pregnancy, and it determined that they were different. But the fact that the California standard was more protective meant that it was not inconsistent with what the Federal law was. And so for that reason, I think that case is the most closely on point to the actual words that we have to work with here. And so rather than sort of conjure up some concepts that are not appropriate as the other side is trying to weave, I think if you just read the statutes here, the statutes by their plain language give you the answer. We hope that not inconsistent is — is — can be interpreted either the way you interpret it or the way Mr. Clement interprets it. Where do I go from there? Well, Mr. Clement doesn't give a definition in his opening brief. All right. Well, let me amend. In his closing brief. And I'll amend the question. So if I think that not inconsistent can mean in conflict with, irreconcilable, but also simply different in an important way, where do I go from there? Well, I think then you look at the source of the law that's supposedly different. And here, where I think that the statute is best understood is that the word applicable focuses on the State law, and the phrase not inconsistent with focuses on the Federal law. I don't know what you can get out of applicable. Is it — can you conceive a situation in which somebody is directed to apply law that is inapplicable? Well, the — the best example that I could give, California in its public resources code has quite extensive rules concerning drilling and mining on land. And one could well conclude that the word applicable could be used to say those standards don't apply to the marine environment of drilling offshore. And so that would be an area of law that if you looked at it, you might say those mining and drilling requirements would seem to be applicable. And then if you thought a little harder about it and said, you know, actually it's quite a different environment and quite a different situation, you might say that, in fact, they are not applicable. And I think that the way you would judge the interplay of those standards through the non-inconsistent with is that if you then go to the text of the Fair Labor Standards Act, and when it invites higher standards to be created by not just other State statutes or Federal statutes, but municipal ordinances, you are seeing Congress's pointer that we are not going to view these labor standards as something that's going to create the sort of conflicts or differences that would give rise, Justice Alito, to the concern that you're expressing. To pick up on Justice Alito's question, if there are two different ways one could imagine interpreting not inconsistent with, why isn't the better answer to look at the overall context here, which is, Justice Kagan said, the overall context is a clear preference, a clear congressional choice to make Federal law the primary, and so that you would choose the interpretation of not inconsistent with that says different from. So what's your response to that? Well, I think that this Court's cases have said otherwise in both Powell and Guerra. I think the statute says otherwise. And I think that ultimately the trump card here is 1334a, which says that the Secretary shall have the power to prescribe regulations. The fact that the Secretary here has chosen not to issue rules that would displace California's more generous-to-worker provisions, I think, is indicative. And you think the Secretary clearly has that authority under that language? That's under a plain reading of the statute, Justice Kavanaugh, the Secretary does have that. And that's why I was quite surprised to hear the other side disclaim a regulatory authority that is written in such plain English. I would like to point out one other thing, which is that because in the State's case, what the other side's provision does is to create a condition for the kind of labor disharmony that Congress surely was trying to legislate against. That labor disharmony would arise whenever a crew is assigned to an onshore or within-State territorial waters rig, as opposed to one that goes out on the Outer Continental Shelf, because the worker who is assigned in-State knows he is going to get the benefit of the California State rules, and he is going to get the benefit of State workers' compensation, whereas the worker who is assigned to a crew to go the Outer Continental Shelf under their version is going to be given lower protections and lower wages. And so because Congress and what the other side's provision does is to create a condition for the kind of labor disharmony that Congress surely was trying to legislate to that, so how does it happen? Yes. In Valladolid, what this Court considered was the overlap between State workers' comp and the Longshore Harbor Workers' Compensation Act as it was incorporated. The Solicitor General at the oral argument, and I invite you to look at the transcript, said both State workers' compensation law and Longshore Harbor work apply, and the worker can get the benefit of whichever one is more generous, and that's why there is an offset provision in 903e of the Longshore Harbor Workers' Compensation Act. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. Clement, you have three minutes remaining. Thank you, Mr. Chief Justice. Just a few points in rebuttal. First of all, my friend wants to draw something from the fact that there are no on-point regulations here addressing this by the Secretary of the Interior. Well, the obvious two reasons why there are no regulations is that the United States Government agrees with us on the interpretation of the statute and agrees with us and is doubtful on its authority to promulgate those regulations. As to the specific issue of workman's comp, the reason that that can be State law can apply is because that's one of the places where Congress has said specifically that State law can apply even on a Federal enclave, and that's 40 U.S.C. 3172. That's the kind of super ---- Sotomayor, why is that a gap? Clement, you get paid for working. You don't get paid for not working. So if the Federal law doesn't pay you for not working, except under the Longshoreman's Act, why would State law apply? Because there's a specific Federal statute that operates as a super-savings clause specific to Federal enclaves, and that's what's missing in the FLSA. A few other points just to make. My friend wants to say that you should interpret Oxlade differently from the Assimilated Crimes Act. It seems to me the much better course is to say that Oxlade is trying to get at the same thing and is trying to do gap-filling. If you don't adopt that rule, then you're going to be saying that there's a greater role for State law, criminal law, on the Outer Continental Shelf than on any other Federal enclave. And keep in mind that Oxlade joins civil and criminal law at the hip. So the same regime on the Outer Continental Shelf applies to criminal law and civil law. And I suggest the way to harmonize all of those Federal statutes is to require gap-filling in every instance. Also, in thinking about this case, do keep in mind that the Outer Continental Shelf is a super-Federal enclave in the sense that no other State was previously sovereign. So you don't have the issues where you have to go back to 1913 and look at what the conditions a State might have put on the grant of land to the Federal government. None of that applies in the Outer Continental Shelf. My friend relies on Powell and Guerra as the two most opposite cases. So Powell is an opposite – inapposite because there you have two separate congressional provisions, both of which go through bicameralism and presentment, and of course this Court is going to try to do anything it can to reconcile two Federal statutes. You don't have that situation here. The second body of inconsistent law was the product of a Sacramento Labor Commission. It doesn't – you don't apply that the same way. Guerra is equally inapposite because Guerra is just a plain old preemption case. And the problem, my friend, on the other side has – has, as the Court has pointed out, is you just can't read the Outer Continental Shelf Lands Act and conclude that the – that Congress wanted these preemption principles to work the same way onshore as in the Outer Continental Shelf. It's a Federal enclave. All the law is Federal law. Thank you.  Thank you, counsel. The case is submitted.